| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL VI | | |
| GRUPO VIVONI, INC.<br><br>Apelante<br><br>v.<br><br>BAR MANAGEMENT,<br>CORP.<br><br>Apelada | KLAN202400203 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Civil Núm.: SJ2022CV10885<br><br>Sobre:<br>Cobro de Dinero, Incumplimiento de Contrato y Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de abril de 2024.

Comparece la parte apelante Grupo Vivoni, Inc. (en adelante, Grupo Vivoni o parte apelante) mediante un recurso de *Apelación* y nos solicita que revisemos la *Sentencia* dictada el 30 de enero de 2024 y notificada el 31 de enero de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante este dictamen, el TPI declaró Ha Lugar la *Moción de Desestimación* presentada por Bar Management Corp. (en adelante, Bar Management o parte apelada). En consecuencia, se desestimó la totalidad de la demanda sobre cobro de dinero, incumplimiento de contrato, y daños presentada por Grupo Vivoni en contra de Bar Management.

Por los fundamentos que expondremos, se modifica la *Sentencia* apelada y se devuelve el caso al foro de instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

**I.**

El 15 de diciembre de 2022, Grupo Vivoni presentó una *Demanda* sobre cobro de dinero, incumplimiento de contrato, y

Número Identificador

SEN2024_____

daños en contra Bar Management.[1] Según se alegó, las partes suscribieron un *Contrato de Arrendamiento de Concesiones* el 17 de marzo de 2022, mediante el cual el Grupo Vivoni le arrendó a Bar Management un espacio de concesionario para la venta de comida durante el evento *Afro Nation Puerto Rico* 2022 el 24, 25, y 26 de marzo de 2022 por el precio de $3,000.00. El contrato requería que todas las ventas realizadas durante el evento se tramitaran mediante el sistema digital "RFDI" (en inglés, *Radio Frecuency Identification*), el cual constaba de dos dispositivos: un terminal cobrador y un brazalete pagador. El sistema "RFID" cobraría un veinticinco por ciento (25%) sobre el precio de venta establecido. Los reportes de ventas diarios y las órdenes de reventa se cuadrarían al final del evento, según lo acordado.

Grupo Vivoni alegó en la demanda que, contrario a lo acordado en el contrato, los reportes de ventas y las órdenes de reventa no se cuadraron al final del evento debido a que el sistema "RFID" no produjo un reporte oficial y final; y que, luego de múltiples incidentes relacionados al cobro del dinero adeudado, Bar Management realizó un pago parcial de $26,352.34 y que aún le adeudaba $41,277.66.

Grupo Vivoni sostuvo que la deuda reclamada era una líquida, vencida, y exigible y que los intentos por recobrarla habían sido infructuosos. Como remedio, solicitó la concesión de una indemnización de $100,000.00 por los daños y perjuicios sufridos a causa del incumplimiento de contrato, más costas y honorarios de abogado por temeridad.

El 20 febrero de 2023, Bar Management presentó su *Contestación a Demanda*, en la que, en síntesis, negó las alegaciones en su contra y levantó varias defensas afirmativas.[2]

---

[1] Apéndice I de la *Apelación*, a las págs. 1-3.
[2] Apéndice II de la *Apelación*, a las págs. 4-6.

Luego de varios trámites procesales, Bar Management presentó una *Moción de Desestimación*.[3] En esta, alegó que procedía la desestimación de la demanda bajo la Regla 10.2 (5) de Procedimiento Civil, *infra*, por esta dejar de exponer una reclamación que justificara la concesión de un remedio. Sostuvo que la deuda reclamada por la parte apelante no era una líquida, vencida y exigible debido a que la cantidad reclamada de $41,277.66, fue calculada a base de las compras de mercancía y productos de alimentos que realizó la parte apelante para el evento y los precios que había fijado. Según la parte apelada, esa suma no constituía un cálculo que conllevara la determinación de cantidad específica. Por último, alegó que también procedía la desestimación del caso por falta de parte indispensable debido a que se requería la presencia de *Festicket*, entidad que generó el informe a base del cual se emitió el pago a la parte apelante.

El 22 de noviembre de 2023, la parte apelante presentó su *Moción en Oposición a Solicitud de Desestimación*.[4] En esta, alegó que Bar Management incumplió con el contrato respecto a lo siguiente:

"(a) No generó reportes de ventas diarios ni tampoco informó de los mismos;

(b) No cuadró al final del evento los reportes, junto a las órdenes de reventa;

(c) No entregó el desembolso de las ventas, ni produjo el balance de reventa al final del evento;

(d) Retuvo y mantiene una cuenta bancaria de su propiedad todo el dinero que generaron las ventas de alimentos confeccionados por la parte demandante.

(e) Luego de dos (2) meses y varios días de celebrado el evento y ante múltiples reclamos realizó un pago parcial de $26,352.34. El pago de dicha cantidad se hizo de forma unilateral, arbitraria y caprichosa;

(f) Alega de manera frívola y temeraria que su única obligación en el Contrato de Concesiones era pagar y así lo hizo conforme el reporte generado por un tercero [*Festicket*] que no se identifica y no forma parte del Contrato de Concesiones; y

(g) El alegado reporte nunca le fue entregado a la parte demandante y éste se vio precisado a recurrir a los

---

[3] Apéndice III de la *Apelación*, a las págs. 7-12.
[4] Apéndice IV de la *Apelación,* a las págs.13-25.

mecanismos de descubrimiento de prueba en este caso para obtener una copia del documento. Dicho reporte contiene graves faltas que impiden que pueda presentarse como una pieza de evidencia válida en este caso".

El 12 de diciembre de 2023, la parte apelada presentó su *Réplica Oposición a Moción de Desestimación.*[5] En esta, alegó que la parte apelante había reconocido en su moción en oposición que *Festicket* era parte indispensable en el pleito; y que, además, la parte apelada había cumplido con su obligación de pagar a la parte apelante conforme al reporte obtenido. A su vez, alegó que la demanda carecía totalmente de alegaciones conducentes a establecer que la alegada deuda era una líquida, vencida, y exigible.

El 19 de diciembre de 2024, Grupo Vivoni presentó su *Dúplica a Réplica a Oposición a Moción de Desestimación,* en la que alegó que el acuerdo contractual era exclusivo y único entre esta y Bar Management.[6] Asimismo, señaló que ni en el contrato ni en sus anejos se hacía referencia a obligaciones con terceros. Además, sostuvo que la demanda establecía una reclamación plausible que justificaba la concesión de los remedios solicitados.

Finalmente, el 30 de enero de 2024, notificada el 31 de enero de 2024, el TPI dictó la *Sentencia* apelada, mediante la cual declaró Ha Lugar la *Moción de Desestimación* presentada por Bar Management y, en consecuencia, desestimó la totalidad de la demanda presentada por Grupo Vivoni. En su dictamen, el TPI concluyó que la deuda reclamada en la demanda no era líquida. A su juicio, la cantidad de $67,300.00 no era una cantidad cierta ni determinada, debido a que el cálculo se había hecho a base de una fórmula utilizada por la parte apelante, la cual no constituyó un cálculo que conllevara a una determinación de cantidad específica.

---

[5] Apéndice V de la *Apelación*, a las págs. 26-28.
[6] Apéndice VI de la Apelación, a las págs. 29-41

Además, concluyó que *Festicket* no era parte indispensable debido a que esta no tenía derecho alguno que se fuera a ver afectado.[7]

Inconforme con la determinación del TPI, Grupo Vivoni acudió ante nos el 1 de marzo de 2024 mediante el presente recurso de *Apelación.* Señala la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA DESESTIMANDO LA DEMANDA, FUNDAMENTADA EN QUE EL APELANTE DEJÓ DE EXPONER UNA CAUSA DE ACCIÓN QUE AMERITE LA CONCESIÓN DE UN REMEDIO, CUANDO DE LOS HECHOS ALEGADOS EN LA DEMANDA SOBRE COBRO DE DINERO, INCUMPLIMIENTO DE CONTRATO Y DAÑOS Y PERJUCIOS ESTABLECEN DE SU FAZ VARIAS RECLAMACIONES QUE SON PLAUSIBLES Y QUE COMO TAL, JUSTIFICAN QUE EL APELANTE TENGA DERECHO A TODO O PARTE DEL REMEDIO SOLICITADO.

El 17 de abril de 2024, la apelada presentó *Alegato de Bar Management, Corporation en Oposición a Apelación.*

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo o en los méritos. S.*L.G. Sierra v. Rodríguez,* 163 DPR 738, 745 (2005); R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, Quinta Edición, San Juan, Michie de Puerto Rico, 2010, pág. 369. De este modo, nuestro ordenamiento procesal civil dispone varios supuestos en los cuales una parte puede solicitar la desestimación de una acción en su contra antes de presentar la contestación a la demanda. R. Hernández Colón, *op. cit.*, págs. 266-267.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, establece, en lo pertinente, lo siguiente (énfasis nuestro):

---

[7] Apéndice VII de la Apelación, a las págs. 42- 51.

"Toda defensa de hechos o de derecho contra una reclamación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada:
(1) falta de jurisdicción sobre la materia.
(2) falta de jurisdicción sobre la persona.
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio.
(6) dejar de acumular una parte indispensable.
[…]."

El inciso 5 de la precitada Regla establece como fundamento para solicitar la desestimación, que la demanda no expone una reclamación que justifique la concesión de un remedio. Al resolverse una moción de desestimación por este fundamento, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022); *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261 (2021); *Conde Cruz v. Resto Rodríguez et al*, 205 DPR 1043, 1065 (2020). Además, tales alegaciones hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *Íd.*; *Dorante v. Wrangler of P.R.*, 145 DPR 408 (1998). Luego el tribunal deberá determinar si a base de las alegaciones la demanda establece una reclamación plausible. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, Séptima Edición, San Juan, LexisNexis, 2017, pág. 307; *Ashcroft v. Iqbal*, 556 US 662 (2009). La Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R.6.1, establece que, para solicitar un remedio en un foro judicial, las alegaciones hechas en la demanda deben contener: "(1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho." Por su parte, la Regla 6.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.2, del referido cuerpo procesal aclara que dichas alegaciones no

deben seguir fórmulas técnicas particulares, siendo requisito únicamente que estas se redacten de manera "sencilla, concisa y directa".

La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. *Accurate Sols. v. Heritage Enviromental*, 193 DPR 423, 432 (2015) citando a *Reyes v. Sunc. Sánchez Soto*, 98 DPR 305, 309 (1970). Tampoco procede la desestimación, si la demanda es susceptible de ser enmendada. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008). En fin, se debe considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). *Véase, además*, R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268; *Ashcroft v. Iqbal*, supra; *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007).

**B.**

El debido proceso de ley exige que se acumulen todas las partes con interés común en un pleito. *Pérez Ríos et al. v. CPE*, 2023 TSPR 136, 213 DPR ___ (2023). Esto responde a dos principios básicos: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita sea uno completo. *Íd.*

Por su parte, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, define una parte indispensable como las "personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia [...]". Véanse, además, *Watchtower Bible et al. v. Mun. Dorado I*, 192 DPR 73, 118 (2014); *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 678 (2012); *Pérez Rosa v. Morales*

*Rosado*, 172 DPR 216, 223 (2007). Asimismo, la Regla 16.1, *supra*, lo que pretende es "proteger a las personas ausentes de los posibles efectos perjudiciales que pueda ocasionarles la resolución del caso y evitar la multiplicidad de pleitos". *Pérez Ríos et al. v. CPE*, supra, pág. 9.

El interés de la parte debe ser real e inmediato, para que se considere que dicha parte es indispensable; no puede tratarse de "*meras especulaciones o de un interés futuro*". *Deliz et als. V. Igartúa et als.*, 158 DPR 403, 435 (2003) (énfasis en el original). El alcance de la figura de parte indispensable es restringido, de forma que solamente puede invocarse cuando la "adjudicación sin la persona ausente tendría un efecto perjudicial sobre el interés real e inmediato" de esta. *García Colón et al. v. Sucn. González*, 178 DPR 527, 549 (2010), citando a *Mun. de Ponce v. A.C. et al.*, 153 DPR 1, 16 (2000).

Para determinar si una parte es realmente indispensable, debemos adoptar un enfoque pragmático, pues el asunto dependerá de los "hechos particulares y específicos" del caso. *Deliz et als. V Igartúa et als.*, supra, pág. 434, citando *Granados Navedo v. Rodríguez Estrada II*, 124 DPR 593, 605 (1989). Debemos realizar "una evaluación individual de acuerdo con las circunstancias particulares presentes en cada caso" y no utilizar una "fórmula con pretensiones omnímodas". *García Colón et al. v. Sucn. González*, supra, pág. 550.

En ese contexto, al determinar si estamos ante una parte indispensable, debemos evaluar los siguientes factores: (1) el interés común de todas las partes sobre el asunto medular del pleito; (2) la inmediatez de ese interés ante el litigio en proceso; y (3) la necesidad de que la presencia de la parte acumulada garantice un remedio completo a las partes que ya están en el caso. *Íd.*; *Romero v S.L.G. Reyes*, 164 DPR 721, 733 (2005).

**C.**

La parte promovente de una acción de cobro de dinero tiene que demostrar que existe una deuda válida, que la misma no se ha pagado, que es la persona o entidad acreedora, y que la persona o entidad demandada es su deudora. *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986). Además, tiene que probar que la deuda que reclama es líquida, vencida y exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993).

En *RMCA v. Mayol Bianchi*, 208 DPR 100, 108-109 (2021), el Foro Máximo determinó:

> "La deuda es líquida por ser cierta y determinada y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía *ha sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas) (Énfasis en original).

Por tanto, únicamente pueden reclamarse por la vía judicial, aquellas deudas que hayan advenido líquidas, vencidas y exigibles. Una deuda es líquida, vencida y, por tanto, exigible cuando por la naturaleza de la obligación o por haberlo requerido el acreedor, la deuda debe ser satisfecha. La deuda es líquida cuando se sabe cuánto es lo que se debe. *Ramos y otros v. Colón y otros*, supra, pág. 546. Nuestro Tribunal Supremo ha expresado que: "El vocablo 'líquida' en relación con una cuenta, en lenguaje corriente significa el saldo 'o residuo de cuantía cierta que resulta de la comparación del cargo con la data'." *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). Igualmente se considera que la deuda es "exigible" cuando la obligación no está sujeta a ninguna causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra, pág. 966.

En resumen, la deuda es líquida cuando se sabe cuánto es lo que se debe y se considera exigible cuando la obligación no está sujeta a ninguna causa de nulidad.

**D.**

El Código Civil de Puerto Rico del 2020, Ley Núm. 55-2020, (en delante, Código Civil) establece que son fuentes de las obligaciones: (a) la ley; (b) los contratos;(c) los cuasicontratos;(d) los actos ilícitos;(e) los actos u omisiones en que interviene culpa o negligencia; y (f) cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento jurídico. Artículo 1063 del Código Civil, 31 LPRA sec. 8984. Por su parte, el Artículo 1158 del Código Civil, 31 LPRA sec. 9303, dispone que: "[l]a persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados".

En cuanto a la obligación contractual, el Código Civil establece que "[l]o acordado entre las partes tiene fuerza de ley [...]". Artículo 1233 del Código Civil, 31 LPRA sec. 9754. Así pues, "una vez perfeccionado un contrato surge la obligación de cumplir con las debidas prestaciones, según pactadas por las partes so pena de responder por los daños ocasionados por tal inobservancia". *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 907 (2012); M. García Cárdenas, *El Nuevo Derecho De Obligaciones y Contratos: Código Civil de 2020*, San Juan, MJ Editores, 2021, pág. 303.

El Tribunal Supremo de Puerto Rico ha hecho distinciones entre las acciones por responsabilidad extracontractual y las acciones por responsabilidad contractual. Las "acciones derivadas de contratos tienen por objeto que se cumplan las promesas contractuales sobre las que las partes de un contrato otorgaron su consentimiento". *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 DPR 712, 721, (1992); *Santiago Nieves v. A.C.A.A.*, 119 DPR 711, 716 (1987). En cuanto a la responsabilidad civil extracontractual, esta

"no nace de la voluntad de las partes, sino del incumplimiento de unas obligaciones y unos deberes impuestos por la naturaleza y por la ley, necesarias a la convivencia social". *Íd.* H.M. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, 2da ed., San Juan, Pub. JTS, 1986, Vol. 1, Cap. I, pág. 42. En ambas situaciones se exige una conducta antijuridica para solicitar la indemnización de los daños. *Ramos v. Orientalist Rattan Furnt., Inc.*, supra. Además, "el deber de indemnizar por infracción de contrato se desenvuelve dentro del ámbito de la preexistente relación; en cambio, cuando la indemnización deriva de acto ilícito, la relación obligatoria surge por primera vez al producirse el daño". *Íd.* Asimismo, se deberá probar "la existencia de los daños alegados y del incumplimiento culposo o doloso de la obligación contractual." *Muñiz-Olivari v Stiefel Labs.,* 174 DPR 813, 819 (2008).

En *Ramos v. Orientalist Rattan Furnt., Inc.*, supra, el Tribunal Supremo de Puerto Rico estableció que, bajo la teoría de la concurrencia de acciones de resarcimiento, el perjudicado pueda optar entre la acción extracontractual o la acción contractual. Para esto tienen que cumplirse con los siguientes requisitos:

> "1. Que el hecho causante del daño sea al mismo tiempo incumplimiento de una obligación contractual y violación del deber general de no causar daño a otro, es decir, violación de un deber con abstracción de la obligación contractual que se daría[,] aunque ésta no hubiere existido.
>
> 2. El perjudicado por efecto de la doble infracción (contractual y delictual) ha de ser la misma persona, es decir, el acreedor contractual...
>
> 3. Por último, es también necesario que la doble infracción haya sido cometida por una misma persona, el deudor contractual [...]. No se trata de exigir en ningún caso dos responsabilidades, sino de optar entre el ejercicio de acciones que tienden al mismo fin". *Ramos Lozada v. Orientalist Rattan Furniture Inc.*, supra, pág. 725. Citando a Santos Briz, *La Responsabilidad Civil*, Ed. Montecorvo, 1981, pág. 93.

La responsabilidad contractual dependerá de la naturaleza del incumplimiento. Es decir, "[e]l deudor de buena fe responde de los

daños y perjuicios previstos o previsibles al tiempo de constituirse la obligación". Artículo 1168 del Código Civil, 31 LPRA sec. 9332. En cambio, "[e]n caso de dolo, el deudor responde de todos los daños y perjuicios que se deriven de su incumplimiento". *Íd.*

**III.**

En su recurso de *Apelación,* la parte apelante señala que erró el TPI "al dictar sentencia desestimando la demanda, fundamentada en que el apelante dejó de exponer una causa de acción que amerite la concesión de un remedio, cuando de los hechos alegados en la demanda sobre cobro de dinero, incumplimiento de contrato y daños y perjuicios establecen de su faz varias reclamaciones que son plausibles y que[,] como tal, justifican que el apelante tenga derecho a todo o parte del remedio solicitado". En síntesis, la parte apelante argumenta que los hechos del pleito fueron alegados de forma clara y concluyente y que, de su faz, no surge duda de que la *Demanda* constituye una reclamación válida contra la parte apelada.

En el caso de autos, la parte apelante alegó que la parte apelada incumplió con lo pactado entre estas en el *Contrato de Arrendamiento de Concesiones.* En específico, sostiene la parte apelante que la parte apelada no rindió los informes de ventas diarios ni tampoco cuadró las órdenes de reventa al final del evento, como establecía el contrato. Como consecuencia de ello, la parte apelante señaló que se vio en la necesidad de calcular el total de los productos vendidos durante los días del evento mediante una fórmula que alegadamente se utiliza en la industria de alimentos para conocer el volumen de las ventas realizadas. Como resultado de este ejercicio, expresó que la parte apelada le adeudaba la cantidad de $67,300.00. No obstante, menciona que la parte apelada emitió un pago parcial de $26,352.34 y que, con posterioridad al pago, esta última alegó que solo tenía la

responsabilidad de pagar, y que así lo hizo, conforme al reporte que generó un tercero, *Festicket.*

Por su parte, la parte apelada planteó las defensas de falta de parte indispensable por no haberse incluido a *Festicket* al pleito, y la inexistencia total de alegaciones con hechos demostrativos suficientes para establecer que la parte apelante tiene derecho a un remedio. Esto último debido a que la deuda alegada no era una cantidad cierta y determinada, por lo que la misma no era líquida.

El TPI acogió el segundo planteamiento, empero, desestimó todas las causas de acción del pleito. Es decir, desestimó las causas de acción de cobro de dinero, incumplimiento de contrato y daños y perjuicios.

Según el derecho antes expuesto, en lo referente a la causa de acción por el cobro de dinero, la parte apelante debía establecer que existía una deuda válida, que la misma no había sido pagada, que era la acreedora, y que la parte apelada era su deudora. *General Electric v. Concessionaires, Inc.*, supra. Además, la parte apelante debía establecer que la deuda era líquida y exigible. *Ramos y otros v. Colón y otros*, supra. Asimismo, la cuantía debe haber sido aceptada como correcta por el deudor. *RMCA v. Mayol Bianchi*, supra.

La controversia sobre la acción de cobro de dinero en este caso giró en torno a si la deuda era líquida. El TPI dispuso del caso bajo la premisa de que la deuda no era líquida por no ser una cantidad cierta y determinada. Según el foro de instancia, la cantidad reclamada no constituía el cálculo que conllevaría a la determinación de cantidad específica, puesto que no se exponía una reclamación que justificara la concesión de un remedio en la *Demanda.*

Al igual que el foro de instancia, entendemos que la deuda en este caso no era líquida por no ser cierta ni determinada. El que la

parte apelante haya tenido que recurrir a una fórmula hace que dicha deuda no sea determinada, pues tuvo que incurrir en cálculos y análisis que no nos llevan a concluir que la cantidad reclamada es cierta y determinada. Además, dicha cuantía tampoco fue aceptada por el deudor como correcta. Por tanto, no se cumplió con lo expuesto en la jurisprudencia interpretativa sobre la causa de acción en cobro de dinero.

Por otro lado, en cuanto a las causas de acción por incumplimiento de contrato y los daños y perjuicios contractuales, le correspondía a la parte apelante establecer una reclamación plausible mediante alegaciones sucintas y sencillas en la *Demanda. Ashcroft v. Iqbal*, supra; Regla 6.1 de Procedimiento Civil, *supra.* Es decir, que existía un contrato perfeccionado el cual se incumplió y le ocasionó daños. Por otro lado, a la parte apelada le correspondía demostrar que la apelante no tenía derecho a remedio alguno. *Reyes v. Sucn. Sánchez Soto*, supra.

De un examen de las alegaciones expuestas en la demanda a la luz de esta normativa, determinamos que estas resultan suficientes para establecer lo que podría constituir una reclamación válida en contra de la parte apelada. De estas surge que la parte apelante detalló claramente hechos y causas de acción resultantes del incumpliendo de contrato y los daños y perjuicios contractuales.

Sin prejuzgar los méritos del caso, surge de la *Demanda* presentada por la parte apelante que esta enunciaba la presencia de actos donde la parte apelada alegadamente incumplió con el contrato. Tomando como cierto lo alegado por la parte apelante, surge de las alegaciones de la *Demanda* que existía un contrato válido entre las partes el cual establecía que se debían generar unos reportes en determinado tiempo y que los mismo alegadamente no fueron producidos según lo pactado. Por lo que alegó la parte apelante que no pudo cobrar el producto de su trabajo, lo cual le

ocasionó daños. Por lo tanto, somos del criterio que le corresponderá a la parte apelante probar los hechos alegados mediante su día en corte. No debemos perder de perspectiva que el derecho que tiene un litigante a su día en corte es parte elemental del debido proceso de ley. *Mun. de Añasco v. ASES et al*, 188 DPR 307, 327, 328 (2013).

En conclusión, somos del criterio que procedía desestimar la causa de acción en cuanto al cobro de dinero. Sin embargo, era improcedente en derecho desestimar las acciones por incumpliendo de contrato y daños y perjuicios contractuales contra Bar Management. Dichas alegaciones, de ser probadas, podrían tener mérito. Lo correcto, por lo tanto, era continuar los procedimientos en cuanto a estas controversias planteadas.

**IV.**

Por los fundamentos anteriormente expuestos, se modifica la *Sentencia* apelada en cuanto a que no procedía la desestimación de las causas de acción de incumplimiento de contrato y daños y perjuicios y se devuelve el caso al foro primario para la continuación de los procedimientos cónsono con lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones